UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL MCWHORTER,<br><br>Defendant. | Criminal Nos:<br>18-CR-150-2 (DWF/HB)<br>18-CR-313 (DWF)<br><br><br><br>**DEFENDANT MICHAEL MCWHORTER'S MOTION FOR SENTENCE REDUCTION** |

Defendant Michael McWhorter respectfully submits this motion seeking a reduced sentence of 120 months, or in the alternative 179 months, pursuant to Amendment 821 of the 2023 U.S. Sentencing Guidelines (the "Guidelines"), which has been made retroactive, and 18 U.S.C. § 3582(c)(2).

## BACKGROUND

Michael McWhorter was instrumental in the government's cases against Emily Claire Hari, Joe Morris, and himself. Mr. McWhorter cooperated with the government without counsel and without seeking a *quid pro quo.*

As a result of his cooperation, the government secured a guilty verdict against Ms. Hari, and guilty pleas from Mr. Morris and Mr. McWhorter. Specifically, Mr. McWhorter pleaded guilty before this Court to the following charges from the superseding indictment filed in the United States District Court for the Central District of Illinois on May 2, 2018 (the "Illinois Indictment"): Count 1: Possession of a machine gun in violation of 18 U.S.C.

§§ 922(o), 924(a)(2); Count 2: Conspiracy to Interfere with Commerce by Threats and Violence, in violation of 18 U.S.C. §§ 2, 1951; and Count 3, Attempted Arson, in violation of 18 U.S.C. §§ 2, 844(i). (Doc. No. 43 at 1–2.[1]) Mr. McWhorter also pleaded guilty to the following charges filed on June 20, 2018 in the United States District Court for the District of Minnesota (the "Minnesota Indictment"): Count 2, Intentionally Obstructing and Attempting to Obstruct by Force and the Threat of Force, and by means of fire and explosives, the Free Exercise of Religious Beliefs, in violation of 18 U.S.C. §§ 2, 247(a)(2); and Count 4: Carrying and Using a Destructive Device During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(B). (*Id.* at 1–3.)

Mr. McWhorter testified in Ms. Hari's trial in Minnesota, where she was found guilty, and was prepared to testify in Ms. Hari's trial in Illinois.[2] Mr. McWhorter acknowledged his role and received a sentence that was below the mandatory minimum based on the substantial assistance he provided to the government. (Doc. Nos. 545, 546.) Mr. McWhorter's criminal history score is now lower under the 2023 U.S. Sentencing Guidelines.

**I.      Mr. McWhorter's Sentencing**

In the presentence investigation report ("PSR"), the probation office determined that Mr. McWhorter had a criminal history score of 3. (Doc. No. 420 at 22 ¶¶ 130–32.) The three points all stemmed from a single 2016 conviction on three misdemeanor counts of

---

[1]      For ease of reference, unless otherwise specified, all references to Document Numbers refer to those used in Case No. 18-CR-150 (DWF/HB), although some documents were simultaneously filed in 18-CR-313 (DWF).

[2]      Ms. Hari pleaded guilty in Illinois instead of proceeding to trial.

manufacturing/delivering cannabis, to which Mr. McWhorter pleaded guilty. (*Id.*) The circumstances described in the PSR demonstrate that Mr. McWhorter sold marijuana to a confidential source in two separate controlled purchases. (*See id.*) The conviction itself resulted in one point. The remaining two points were added because Mr. McWhorter committed the offenses that are the subject of this case while on probation for those misdemeanors. (*Id.* ¶¶ 131–32); *see also* U.S.S.G. § 4A1.1(d) (2021) ("Add **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."). These three points yielded a criminal history category of II. (Doc. No. 420 at 22 ¶¶ 130–132.)

An offense level of 28 and criminal history category of II yielded a Guidelines range of 87–108 months. U.S.S.G. § 5A. (*See also* Doc. No. 420 at 29 ¶ 168.) Count 3 of the Illinois Indictment (attempted arson) carries a mandatory minimum of 5 years (60 months), and Count 4 of the Minnesota indictment (carrying and using a destructive device during and in relation to crimes of violence) carries a mandatory minimum of 30 years (360 months) that may not be concurrent with any other term of imprisonment. (Doc. No. 420 at 29 ¶ 167); *see also* 18 U.S.C. §§ 844(i), 924(c)(1)(B)(ii), 924(c)(1)(D)(ii). Thus, including the mandatory minimum of 360 months, the Guidelines range was 447 to 468 months. (Doc. No. 559 at 1.)

The government acknowledged that Mr. McWhorter has "cooperated with law enforcement concerning ongoing investigations," meaning he has been "debriefed by law enforcement officers, assist[ed] proactively in ongoing law enforcement investigations,

3

and testif[ied] truthfully" at Ms. Hari's trial. (Doc. No. 582.) In exchange, the government agreed to move the Court, pursuant to 18 U.S.C. § 3553(e), "to allow the Court to sentence [Mr. McWhorter] without regarding to any mandatory minimum sentence of imprisonment" that applies. (*Id.*) The government also agreed to move the Court, pursuant to U.S.S.G. § 5K1.1, for a downward departure from the Guidelines range. (*Id.*; *see also* Doc. No. 533.)

At the April 12, 2022 sentencing hearing, the Court stated that it would treat Mr. McWhorter's criminal history category as I instead of II based on the agreement of the parties. (Sentencing Tr. at 4:10–22.) Nonetheless, the Court adopted the PSR without changes. (Doc. No. 546 § I.A.) Mr. McWhorter was sentenced to a total of prison term of 190 months. (Doc. No. 545 at 2.) This sentence included the 30 months for counts 1, 2, and 3 in Case No. 18-CR-313 and count 2 in Case No. 18-CR-150, all to be served concurrently, as well as 160 months to be served consecutively for count 4 in Case No. 18-CR-150. (*Id.*) The Court's statement of reasons for its downward departure included "criminal history overstated," as part of Mr. McWhorter's history and characteristics, as well as several other factors. (Doc. No. 546 § VI.C. at 3.) However, at the sentencing hearing, the Court stated its decision would have been the same regardless of consideration of the factors in § 3553(a). (Sentencing Tr. 67:22–68:4.)

Mr. McWhorter is presently incarcerated at FCI Thomson in Thomson, Illinois and his projected release date is September 10, 2031. (Doc. No. 559 at 3.)

## II. 2023 Guidelines Amendment

Effective November 1, 2023, the Guidelines added Amendment 821, which changed the subsection of Section 4A1.1 that had previously added two criminal history points for Mr. McWhorter. U.S.S.G., Suppl. to App. C at 234–35 (Nov. 1, 2023). Specifically, former subsection (d) was stricken and replaced with new subsection (e), which states: "Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." *Id.* at 235; *see also* U.S.S.G. § 4A1.1(e) (2023).

Amendment 821 was made retroactive through Amendment 825. U.S.S.G., Suppl. to App. C at 261–62 (Nov. 1, 2023); *see also United States v. Claybron*, 88 F.4th 1226, 1230 (7th Cir. 2023). Therefore, it is appropriate to recalculate Mr. McWhorter's criminal history score and category based on the revised language now found in Section 4A1.1(e).

## ANALYSIS

### I. Legal Standard

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

> When the Commission makes a Guidelines amendment retroactive, 18 U.S.C. § 3582(c)(2) authorizes a district court to reduce an otherwise final sentence that is based on the amended provision. Any reduction must be

5

consistent with applicable policy statements issued by the Sentencing Commission. The relevant policy statement, USSG § 1B1.10, instructs courts proceeding under § 3582(c)(2) to substitute the amended Guidelines range while "leav[ing] all other guideline application decisions unaffected." § 1B1.10(b)(1). Under § 3582(c)(2), a court may then grant a reduction within the amended Guidelines range if it determines that one is warranted "after considering the factors set forth in section 3553(a) to the extent that they are applicable."

*Dillon v. United States*, 560 U.S. 817, 821–22 (2010). The sentencing court should use a two-step process:

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, § 1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1)
>
> Consistent with the limited nature of § 3582(c)(2) proceedings, § 1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution. § 1B1.10(b)(2)(A). Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term "comparably" below the amended range. § 1B1.10(b)(2)(B).
>
> At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case. Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings.

6

*Id.* at 827. "[T]he court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining: (I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction, but only within the limits described in subsection (b)." U.S.S.G. § 1B1.10, appl. notes ¶ 1. "The court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" and "may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment." (*Id.*)

## II.     Mr. McWhorter Has a Lower Guidelines Range

When Mr. McWhorter's criminal history score is recalculated under Section 4A1.1(e), it is now 1, instead of 3. Specifically, Mr. McWhorter only received 1 point under subsections (a) through (d) for a conviction for selling marijuana. (Doc. No. 420 at 22 ¶¶ 129–30.) Therefore, he did not "receive 7 or more points under subsections (a) through (d)," and receives no additional criminal history score points, for a total of 1. A criminal history score of 1 yields a criminal history category of I. U.S.S.G. § Ch. 5, Pt. A. This criminal history category, combined with the offense level 28, results in a reduced guidelines range of 78–97 months, plus the mandatory minimum of 360 months. When the mandatory minimum of 30 years (360 months) for Count 4 of the Minnesota Indictment, the amended guidelines range is 438–457 months. (Doc. No. 559 at 1.) There is an 11-month difference between top of the former Guidelines range and the amended Guidelines range.[3]

---

[3]     468-457=11. (*See* Doc. No. 559 at 1.)

**III.   A Further Downward Departure is Warranted.**

Because Mr. McWhorter was given a sentence below the guidelines range in his initial sentencing, he is eligible for a new sentence that is "'comparably' below the amended range." *Dillon*, 560 U.S. at 827 (quoting U.S.S.G. § 1B1.10(b)(2)B). Given the lowering of Mr. McWhorter's Guidelines sentencing range, he respectfully asks to be resentenced based on the factors in Section 3553(a), as well as the unlikelihood of danger to any person or to the community and his post-conduct sentencing. *See* 18 U.S.C. § 3582(c)(2) ("[T]he court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."); U.S.S.G. § 1B1.10, appl. notes ¶ 1 ("The court shall consider the nature an seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" and "may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment.").

1.   **Section 3553(a) Factors**

The Section 3553(a) factors include "'the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as 'the need for the sentence imposed' to serve the four overarching aims of sentencing." *Dean v. United States*, 581 U.S. 62, 67 (2017) (quoting §§ 3553(a)(1), (2)(A)–(D)). In addition, the court must consider the kinds of sentences available and the sentencing range, pertinent policy statements, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and restitution.

8

§ 3553(a)(3)–(7). These factors have been addressed in detail in Mr. McWhorter's sentencing position memorandum, but are summarized here for ease of reference. (*See* Doc. No. 525 at 22–25.)

*First*, the nature and circumstances of the offense were described in Mr. McWhorter's plea agreement, the PSR, and Mr. McWhorter's testimony at Ms. Hari's testimony as the direct result of the plan, coordination, and instruction of Ms. Hari. Ms. Hari came up with the plan for all incidents to which Mr. McWhorter pleaded guilty, provided instructions and equipment, and ensured that the plans were carried out. The jury and the government agreed that Ms. Hari was the orchestrator of the Dar al Farooq bombing. Ms. Hari pleaded guilty to charges related to the attempted arson in Illinois, as well as charges related to charges related to the Ambia, Indiana home invasion, robbery at a Walmart in Watseka, Illinois; attempted robbery at a Walmart in Mt. Vernon, Illinois; sabotage of railroad tracks owned by the Canadian National Railway;[4] and attempt to get Mr. O'Neill in trouble with law enforcement—all of which form the factual bases for Mr. McWhorter's plea. (*Compare* Doc. No. 526-1 at 19–21, *with* Doc. No. 43 at 6–9.).

*Second*, Mr. McWhorter's history and characteristics warrant a further downward departure. Prior to sentencing, the Court received at least ten letters from Mr. McWhorter's mother, his sister, other family members, and one or two Muslim prisoners with whom Mr. McWhorter was detained with Sherburne County. (Sentencing Tr. at 3:15–20.) The

---

[4] Mr. McWhorter maintains his objection to the PSR's statement that "the defendants ignited thermite to sabotage a portion of railroad track." (Doc. No. 420 at 7 ¶ 31.) Only Ms. Hari ignited the thermite. (Doc. No. 404 at 2.)

9

government sought a sentence that was a 50% reduction of the mandatory minimum, which is an "incredibly rare" request. (*Id.* at 8:2–14.) The government and the Court acknowledged "a pretty extraordinary showing of solidarity . . . and support [for leniency]. Not just from Dar al-Farooq and not just the Muslim community but also from greater Minnesota upper Midwest faith community as well," which the government described as "extremely extraordinary." (*Id.* at 9:7–14.)

As previously explained, Mr. McWhorter worked hard to better himself over three and a half years in pretrial detention in Sherburne County, and wrote a letter of apology to Imam Mohamed Omar of the Dar al-Farooq mosque. (Doc. Nos. 562-2 through 562-4.) Since sentencing, Mr. McWhorter has continued on his path of self-improvement. He began his taking courses towards his general education degree (high-school equivalency) on September 9, 2022, and earned his degree on December 5, 2023. (Decl. of Ellen Ahrens Wickham, Ex. A at 2; *id.*, Ex. B at 2.) He has also continued perusing the following educational and vocational studies:

    a.    Franklin Covey Certificate of Completion of 7 Habits on the Inside;

    b.    Cleaning Management Institute Best Certified Custodial Technician;

    c.    Cleaning Management Institute Advanced Certified Custodian Technician;

    d.    FCI Thomson Psychology Program Certificate of self study and family ties;

    e.    FCI Thomson Psychology Program Certificate of anger management;

    f.    FCI Thomson Psychology Program Certificate of criminal thinking; and

    g.    Study of *Mindfulness for Beginners* and *Criminal Thinking*.

(*Id.*, Ex. A.) In addition, he has continued to take educational classes since receiving his degree. (*Id.*, Ex. B at 1 (reflecting additional classwork between July 6, 2023 and June 20, 2025).)

*Third*, Mr. McWhorter's restitution payments are complete. (Case. No. 18-CR-313, Doc. No. 53.) *See* 18 U.S.C. § 3553(a)(7). The Court ordered Mr. McWhorter to pay $1,457.07 to Walmart and a $300 court fee in the Illinois matter. (Case No. 18-CR-313, Doc. No. 44 at 6.) This amount was Mr. McWhorter's obligation jointly and severally with his co-defendants Ms. Hari and Mr. Morris. Mr. McWhorter's restitution and court fee has been paid, as reflected by the government's August 7, 2025 filing. (Case. No. 18-CR-313, Doc. No. 53.)

    **2.**    **Amended Sentence**

Mr. McWhorter respectfully requests a reduced sentence of 120 months, or, in the alternative, a reduced sentence of 179 months. Mr. McWhorter initially sought a 120-month sentence, and such a sentence is even more appropriate now in light of Mr. McWhorter's continued self-improvement and payment of restitution. In the alternative, Mr. McWhorter requests an 11-month reduction in his sentence, for a new term of imprisonment of 179 months. This represents the difference between the upper limit of the prior sentencing range (468 months) and the upper limit of the amended sentencing range (457 months). (Doc. No. 559 at 1.)

While Mr. McWhorter is greatly appreciative of the Court's initial sentence, he a reduced sentence is appropriate in consideration of the revised Guidelines and consideration of (1) his status as someone who was not the leader of the criminal activity;

11

(2) his continued dedication to self-improvement since sentencing; and (3) the fact that his restitution and court fees are already paid.

## CONCLUSION

For the foregoing reasons, Mr. McWhorter respectfully asks the Court to reduce his term of imprisonment pursuant to Amendment 821 of the Sentencing Guidelines.

**MADEL PA**

Dated: October 27, 2025    By:    *s/ Ellen Ahrens Wickham*
Christopher W. Madel (#230297)
Ellen Ahrens Wickham (#391004)
800 Hennepin Avenue
800 Pence Building
Minneapolis, MN 55403
Phone: (612) 605-0630
cmadel@madellaw.com
ewickham@madellaw.com

***Attorneys for Defendant Michael McWhorter***